## Richmond.

### BOSTON & CO. v. C. & O. R. R. CO. AND ALS.

#### January 26, 1882.

1. MECHANICS' LIEN—*General contractor—Railroad company.*—General contractors in May, 1874, filed bill to assert mechanics' lien against R R company, predicated on notice of lien recorded in chancery court of Richmond city, 27th December, 1873, *and nowhere else.* Lien claimed for $5,000 worth of lumber furnished R R company at different times and places; part for constructing wharves in H county, within one mile of corporate limits of said city; another part for constructing tunnel in said city; third part for constructing coal-bins and trestles at S. in A county; and residue for constructing round-house at H in W. Va. Lien claimed on whole property of R R. company in this State, and particularly on the wharves, &c., and the tunnel, &c. The items extend from July 1 to December 8, 1873; but the last lumber furnished for the tunnel was on September 8, 1873.

HELD :

    1. They have no statutory lien against the railroad company.

    2. They have no equitable right to priority over the mortgages on the principles affirmed in *Williamson's Adm'r* v. *R. R. Co.,* 33 Gratt. 624, and *Gibert* v. *R. R.;* because such claim was asserted first here in argument, but not in the record ; and because the materials were purchased for the *construction—not* for the *maintenance—* of the road.

    3. The wharves are within the *jurisdiction of* said city, which extends one mile beyond its corporate limits, but, in the sense of the statute, they are not *within the city.*

    4. The tunnel is within the city, but the last item of the account for lumber furnished for the tunnel is dated September 8, 1873, and the lien-claim was not filed within the prescribed time.

2. IDEM—*Idem.*—Furnishing materials creates incipient lien, but to perfect it general contractor must, in conformity with Code 1873, ch. 115, § 3 to § 11 inclusive, within the prescribed time, file in the county or corporation court of the county or corporation in which is situated the property on which the lien is sought to be secured, and in the clerk's office of

the chancery court of Richmond city, where the property is in said city, a true account of the work done, or materials furnished, sworn to by the claimant or his agent, with a statement attached, signifying his intention to claim the benefit of the lien, and setting forth a description of the property on which he claims a lien, which is to be recorded by the clerk.

3. IDEM—IDEM—*R. R. Co.*—If such lien is given on the property of a railroad company *in its entirety*, it can only be secured by filing the account in the proper clerk's office of every county or corporation through which the road passes.

4. QUÆRE.—Are railroad companies embraced within the provisions of Code 1873, ch. 115, § 3 to § 11 inclusive?

Appeal from decree of circuit court of Richmond city in suit of John T. Boston & Co. *v.* Chesapeake and Ohio Railroad Company. The bill was first filed in the chancery court of said city, then removed to the circuit court of Henrico county, and thence to the circuit court of said city, where was then pending a suit for the foreclosure of certain mortgages on the property, franchises, &c., of said company, and in suit plaintiffs were allowed to assert their claim. The object of the plaintiffs' bill was to enforce a mechanics' lien, which they claimed as general contractors, for upwards of $5,000 worth of lumber furnished by them to the company at different times and places. A part was used to construct wharves on James river in Henrico county, within one mile of the corporate limits of said city; another part to construct "Church Hill" tunnel in said city; a third part to construct coal-bins and trestles at Staunton; and the residue to construct a round-house at Hinton, in West Virginia.

The plaintiffs filed, December 27, 1873, in the clerk's office of said chancery court, *and nowhere else,* an account of the lumber furnished by them, stating specifically the different purposes for which it was furnished, and claimed a lien for the amount on the whole property of the company, from the terminus of the road on James river to the point

at which it passes into West Virginia, and particularly on the wharves and their appurtenances, and on "Church Hill" tunnel and its appurtenances. The different items in the account of lumber filed extend from July 1, 1873, to December 8, 1873. The last lumber furnished for the "Church Hill" tunnel, the only point in said city where any of it was used, was on September 8, 1873, and the account was filed December 27, 1873. Court below disallowed the plaintiffs' lien-claim, and they appealed to this court.

*James G. & W. W. Field, William W. & B. T. Crump, J. A. Coke*, for appellants.

*William J. Robertson, Henry T. Wickham*, for the appellees.

BURKS, J., delivered the opinion of the court.

Let it be conceded (for the purposes of this case) that railway companies are within the provisions of the act concerning mechanics' liens, approved July 11, 1870 (the same embodied in the Code of 1873, ch. 115, from section 3 to section 11 inclusive), the first question is, whether the appellants have established the lien they seek to enforce, or any valid lien under the statute.

It is among the agreed facts that they furnished, under contract, the lumber for which they charge; that it was used by the defendant company and incorporated with its property, and that the balance due them for the materials thus supplied is upwards of $5,000.

But these facts alone would not give the lien which is claimed, as is apparent from the language and the whole scope of the statute. The furnishing of the materials, or perhaps the contract to furnish them, created an incipient lien only (section 9), and other acts were necessary to perfect it—to "secure" and make it available.

Section 3 of the Code (which is section 1 of the act of 1870) gives the lien, but not absolutely. The language is, that "all artizans [and others described] shall *have* a lien *as hereinafter provided*," &c.

Plainly, this is a lien subject to the provisions which follow. Looking to these, we find in the next succeeding section (4) that "a general contractor, *wishing to avail himself* of the lien given by the preceding section, *shall* file within thirty days [as the law then stood] after the completion of the work, in the clerk's office of the county or corporation court of the county or corporation in which the property upon which *a lien is sought to be secured* is situated, and in the clerk's office of the chancery court of the city of Richmond, where the property is in said city, a true account of the work done or materials furnished, sworn to by said claimant or his agent, with a statement attached, signifying his intention to claim the benefit of said lien, and setting forth a brief description of the property upon which he claims the lien," and that "it shall be the duty of the clerk in whose office such account and statement shall be filed, as hereinbefore provided, to record the same in a book kept for that purpose, and from the time of such filing all persons shall be deemed to have notice thereof."

The appellants are "general" contractors within the meaning of the statute. *Merch. and Mech. Sav. Bank of Norfolk* v. *Dashiell and others*, 25 Gratt. 616.

Subsequent sections (7 and 8) mention the "lien secured," evidently by the filing of the account and statement, as provided by section 4. Compliance, therefore, with the requirements of this section is essential to *secure* the lien given, unless perhaps where such compliance is prevented by the owner of the property, as was the case in 25 Gratt. cited *supra*.

Assuming that the property of the railway company is within the operation of the statute, the inquiry is, did the

appellants comply with the law so as to secure a lien on that property? They made out an account of the materials furnished, which was sworn to by one of them, with a statement attached, signifying their intention to claim the benefit of the lien, and setting forth a description of the property upon which they claimed the lien. They claimed a lien upon the whole property of the company, from the terminus of its road on James river to the point at which it passes into West Virginia, its road-bed, &c., and particularly on the wharves and all the appurtenances, buildings and structures therewith connected, and the land adjacent thereto and necessary for the use of said wharves; and upon the tunnel known as the "Church Hill" tunnel, in the city of Richmond, and the lands of the company adjacent thereto, &c., &c.

The account and statement were filed in the clerk's office of the chancery court of the city of Richmond and no where else.

Now, manifestly, so far as the claim applies to the property as an entirety, the lien (if given by the statute) could have been secured only by filing the account and statement in the clerk's office of the county or corporation court of every county or corporation through which the road ran; and so far as it applies to specific property in the construction, repair, or improvement of which the materials furnished were used, the account and statement should have been filed in the proper clerk's office of the county or corporation in which such specific property is situated. If the appellants could have acquired or secured any lien at all by filing the account and statement in the clerk's office of the chancery court of Richmond, it was confined to the account for lumber furnished for the construction of the "Church Hill" tunnel, which is within the corporate limits of the city, and the filing was too late for that purpose. The last item of that account bears date September 8,

1873, and the lien claim was not filed in the office till December 27, 1873.

As to the wharves, they are outside but within one mile of the corporate limits of the city, and it is contended that the clerk's office of the chancery court of Richmond was the proper office in which to file the claim for the lumber furnished for the construction of these wharves.

In support of this contention, the cases of *Blackford and others* v. *Hurst and others*, 26 Gratt. 203 ; *Burgess* v. *Belvin and others*, 32 Gratt. 633 ; and *Campbell & Co.* v. *Nonpareil Fire Brick and Kaolin Co.*, 5 Va. Law Journal, 115, are relied on. An examination of these cases will show that they relate exclusively to the recordation of deeds and other writings in respect to property "situated, lying, or being within the *jurisdiction* of a corporation or hustings court." The statutes under which these decisions were made have no reference whatever to the filing and recordation of claims under the mechanics' lien laws of 1870. That law points out plainly the office in which the claim must be filed—"the clerk's office of the county or corporation court of the county or corporation in which the property upon which a lien is *sought to be secured* is situated," and "the clerk's office of the chancery court of the city of Richmond, where the property is in said city"—that is, within the corporate limits—not, as in the other statutes, "within the *jurisdiction*" of the court. Although the "jurisdiction" of the chancery court of the city of Richmond extends one mile beyond the corporate limits, and the wharves are within the limits of that jurisdiction, yet they are certainly not "within the city," and therefore recordation in the office of the chancery court of the claim for materials furnished for the construction of these wharves was not within the statute.

For the reasons stated, I am of opinion that the appellants have no statutory lien for the balance of the money due them.

But it is argued that if they have no such lien, still they have an equitable right to priority over the mortgagees, on the principles affirmed by this court in *Williamson's Adm'r* v. *Washington City, Virginia Midland and Great Southern Railroad Co.*, 33 Gratt. 624, and *Gibert* v. *R. R. Co.* (not yet reported).

It might be a sufficient answer to this argument to say that no such claim as this is set up in the record. The bill asserts a demand based exclusively on the statutory lien. The petition filed in the foreclosure suit does the same thing, and the whole litigation below has been confined to that demand. But if the claim now set up here for the first time could be entertained, it could not be allowed, because, if for no other reason, the materials were furnished for *construction,* not for *maintenance,* of the road. (See the cases before cited.)

Several very interesting questions were discussed at the bar, which I have not noticed, because, in the view I have taken, it was not necessary to do so.

Upon the whole matter, I am of opinion that there is no error in the decree of the circuit court, and that it should be affirmed.

DECREE AFFIRMED.